[Cite as *In re M.A.*, 2019-Ohio-5367.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|                        |     |                             |
|------------------------|-----|-----------------------------|
| IN RE:                 | :   |                             |
| M.A.                   | :   | CASE NO. CA2019-08-129      |
|                        | :   | O P I N I O N<br>12/30/2019 |
|                        | :   |                             |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2017-0105

Michael T. Gmoser, Butler County Prosecuting Attorney, John C. Heinkel, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Amy R. Ashcraft, P.O. Box 172, Seven Mile, Ohio 45062, for appellant

Legal Aid Society of Southwest Ohio, LLC, Jamie Landvatter, 10 Journal Square, 3rd Floor, Hamilton, Ohio 45011, Guardian ad Litem

**HENDRICKSON, P.J.**

{¶ 1} Appellant, father of M.A., appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of M.A. to appellee, Butler County Department of Job and Family Services, Children Services Division ("BCDJFS").[1] For the reasons detailed below, we affirm the juvenile court's decision.

{¶ 2} BCDJFS filed a complaint on March 20, 2017, alleging dependency of M.A. and requesting temporary custody. At the time of the complaint, M.A. was nearly two and one-

---

1. While a party to the permanent custody proceeding, M.A.'s mother did not appeal the decision granting permanent custody to BCDJFS.

half years old and lived with his mother and three older half-siblings.[2]  The juvenile court granted temporary custody and BCDJFS placed M.A. with his paternal grandmother.  That placement proved unsuitable, so in early April 2017, M.A. was moved into foster care.  Based in part on the need to change placement and because the initial complaint did not provide specific facts for the dependency allegation, BCDJFS filed an amended complaint on April 6, 2017.  The amended complaint alleged several bases for dependency: M.A.'s mother was homeless, unemployed, and had been sentenced to serve time in jail; appellant had active warrants from the Middletown Municipal Court for drug offenses; appellant had been arguing and fighting over housing and finances in the presence of the children; and appellant had violated an earlier order from the court to have no contact with M.A.

{¶ 3}  On June 5, 2017, the juvenile court adjudicated M.A. dependent.  A dispositional hearing was held on July 7, 2017 before a magistrate.  The magistrate ordered M.A. to remain in the temporary custody of BCDJFS and approved a case plan which had the goal of reunification of M.A. with his parents.  This case plan required appellant to complete a substance abuse/mental illness assessment, complete treatment and therapeutic programs based on that assessment, submit to drug screening upon request, procure and maintain stable employment and housing, participate in a parenting education program, and demonstrate an understanding of his child's individual needs with an ability to consistently meet those needs.  The juvenile court subsequently adopted the magistrate's dispositional orders.

{¶ 4}  During the pendency of the case, appellant only limitedly complied with the case plan requirements.  Appellant completed the required substance abuse/mental illness assessment and requested drug screenings, however, he failed to complete the

―――――――――――――
2. M.A.'s siblings were also subject to separate abuse, neglect, dependency proceedings.  These siblings have no biological relation to appellant.

- 2 -

recommended treatment and therapeutic programs. In addition, appellant routinely tested positive for illicit controlled substances such as amphetamine, methamphetamine, cocaine, and marijuana on requested drug screenings. Furthermore, appellant was intermittently incarcerated for different criminal charges. Finally, appellant had his regular visitation appointments with M.A. suspended on two occasions because of his failure to appear at appointments or arrive late to appointments two times within a 30-day period.

{¶ 5} On October 12, 2018, BCDJFS moved for permanent custody of M.A. In March 2019, a juvenile court magistrate held a hearing on the matter. At the hearing, the magistrate heard testimony from M.A.'s mother, appellant, and the assigned BCDJFS caseworker. Additionally, BCDJFS presented several documentary exhibits including the drug screening analyses, the social summary reports generated by BCDJFS, appellant's substance abuse/mental illness assessments, and the reports from appellant's limited treatment/therapeutic services.

{¶ 6} On March 25, 2019, the magistrate granted the motion for permanent custody. The juvenile court overruled objections filed by appellant and adopted the magistrate's decision. Appellant now appeals, raising two assignments of error for review. For ease of analysis, the two assignments of error will be discussed together.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY GRANTING BCCS'S MOTION FOR PERMANENT CUSTODY WITHOUT THE SUPPORT OF CLEAR AND CONVINCING EVIDENCE.

{¶ 9} Assignment of Error No. 2:

{¶ 10} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY GRANTING THE STATE'S MOTION FOR PERMANENT CUSTODY WHICH WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 11} In both assignments of error, appellant argues that the trial court should not have granted BCDJFS permanent custody because BCDJFS failed to prove permanent custody was in M.A.'s best interest and the decision was against the manifest weight of the evidence.

{¶ 12} R.C. 2151.414 provides a juvenile court the authority to terminate parental rights and award permanent custody to a public children services agency. The state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated. *In re K.W.*, 12th Dist. Butler No. CA2015-06-124, 2015-Ohio-4315, ¶ 11, citing *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388 (1982). The clear and convincing standard of proof requires such evidence that will "produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re T.P.*, 12th Dist. Butler No. CA2015-08-164, 2016-Ohio-72, ¶ 18.

{¶ 13} Pursuant to R.C. 2151.414(B)(1), the juvenile court must make findings pursuant to a two-part test. *In re C.D.*, 12th Dist. Clermont No. CA2019-02-014, 2019-Ohio-4911, ¶ 14. First, the juvenile court must find that it is in the best interest of the child to grant permanent custody to the requesting agency. *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. Second, the juvenile court must find that one of the following R.C. 2151.414(B)(1)(a)-(e) factors exists: the child is abandoned; the child is orphaned; the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; or on three separate occasions the child or another child in the custody of the parent from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child. *In re L.S.*, 12th Dist. Brown Nos. CA2019-03-001 and

CA2019-03-002, 2019-Ohio-3143, ¶ 19.

{¶ 14} On review, an appellate court is "generally limited to considering whether sufficient credible evidence exists to support the juvenile court's determination." *In re A.S.*, 12th Dist. Butler Nos. CA2019-05-071, CA2019-05-072, and CA2019-05-073, 2019-Ohio-4127, ¶ 19. Therefore, this court will reverse the juvenile court's decision to grant permanent custody only if there is a sufficient conflict in the evidence presented. *In re W.J.T.*, 12th Dist. Butler No. CA2019-03-047, 2019-Ohio-3051, ¶ 22.

{¶ 15} Nevertheless, an appellate court may conclude that the judgment is against the manifest weight of the evidence. *In re A.S.* at ¶ 19. To determine whether the judgment was against the manifest weight of the evidence, an appellate court:

> "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered."

*In re S.M.*, 12th Dist. Warren Nos. CA2018-08-088 thru CA2018-08-091 and CA2018-08-094 thru CA2018-08-097, 2019-Ohio-198, ¶ 16, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. In weighing the evidence, there is a presumption in favor of the findings made by the finder of fact and evidence susceptible to more than one construction will be construed to sustain the verdict and judgment. *In re C.Y.*, 12th Dist. Butler Nos. CA2014-11-231, CA2014-11-236, CA2014-11-237, and CA2014-11-238, 2015-Ohio-1343, ¶ 25, citing *Eastley* at ¶ 21.

{¶ 16} On appeal, appellant does not dispute that the trial court had sufficient evidence to satisfy the second part of the two-part test. The juvenile court found that R.C. 2151.414(B)(1)(d) applied because M.A. had been in the temporary custody of BCDJFS for more than 12 months out of a consecutive 22-month period from the date of adjudication to the time BCDJFS's moved for permanent custody. The record contains competent credible

- 5 -

evidence supporting this finding. The second prong of the permanent custody test is therefore satisfied.

{¶ 17} Instead, appellant contends that the juvenile court erred in its consideration of the best interest of M.A. In examining the child's best interest, a juvenile court is required to consider all relevant factors, including, but not limited to the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a)-(e). In considering these best interest factors, "[t]here is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 56. Moreover, the focus is on the *child's* best interest, therefore "[p]arental interests must be subordinated to the child's interest in determining an appropriate disposition of any petition to terminate parental rights." *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979).

{¶ 18} Here, the juvenile court made findings as to each of these factors. First, the juvenile court discussed M.A.'s interaction and interrelationship with appellant and the foster caregiver. The juvenile court found that it was clear appellant loved M.A. Notwithstanding that affection, the juvenile court found that appellant had problems visiting M.A. with several instances of either arriving late to the scheduled appointment or completely failing to attend. Moreover, the juvenile court found that M.A. becomes agitated before visits with his parents.

{¶ 19} This court's review of the record supports the trial court's findings. At the hearing, appellant admitted that his visitation privileges were suspended at least once and that he had missed visits because of his incarceration. The record demonstrates that appellant's visitation appointments were suspended in May 2018 and then later in October 2018. While appellant's visits were reinitiated at the time of the permanent custody hearing, appellant was required to confirm the visits in advance and report several hours early to the appointment. Furthermore, appellant's visitation privileges never progressed beyond supervised visits.

{¶ 20} Regarding M.A.'s relationship with the foster caregiver, the juvenile court found that M.A. is making progress in the foster home and is involved in activities and the family. The caseworker testified that M.A.'s foster caregiver was conducting preschool equivalent activities with M.A. and expressed interest in adopting M.A. In addition, M.A.'s ability to interact and communicate with others has improved since his initial removal from the parents' home.

{¶ 21} Second, the juvenile court addressed the wishes of the child. The juvenile court did not interview M.A. but found that M.A.'s wishes were conveyed through the guardian ad litem, who recommended BCDJFS be granted permanent custody.

{¶ 22} Third, the juvenile addressed M.A.'s custodial history. The juvenile court found that M.A. had been in the custody of BCDJFS for 12 months out of a consecutive 22-month

period. Specifically, M.A. had been in foster care from the date of adjudication in June 2017 to the filing of the motion for permanent custody in October 2018. Therefore, M.A. had been in temporary custody for more than 16 months out of a 22-month consecutive period.

{¶ 23} Fourth, the juvenile court discussed M.A.'s need for legally secure placement. The juvenile court made several findings as to appellant's suitability for placement. The juvenile court noted that appellant was employed in the construction industry and provided a "somewhat confusing testimony about his housing situation," but had stable housing and employment. As to the other requirements of the case plan, the juvenile court found that appellant initiated his recommended treatment program following a substance abuse/mental illness assessment, but discontinued his involvement in that program and failed to participate in the other available services. Ultimately, the juvenile court found that "except for employment and housing, [appellant] has completed no case plan services." Consequently, the juvenile court found that the only option to provide legally secure permanent placement was to grant permanent custody to BCDJFS.[3]

{¶ 24} At the permanent custody hearing, appellant admitted that during the pendency of the case he was incarcerated for a period of time and this prevented him from participating in case plan services. Further, the record shows that appellant had to complete a second substance abuse/mental illness assessment and new information release authorizations to obtain new referrals for treatment services because the initial referrals had expired.

{¶ 25} Although the juvenile court found stable housing, our review of the record shows that appellant did not confirm his permanent residence. According to appellant, he lived in three places: his brother's residence, his mother's residence, and "on and off" at the residence of M.A.'s mother. Thus, his living situation remains similar to the time the initial

---

3. The juvenile court decided that reunification with M.A.'s mother remained an unsuitable option.

complaint was filed, a time in which appellant described his residence with M.A. and M.A.'s mother as also "on and off." Appellant presented no additional evidence to clarify his housing situation.

{¶ 26} As to the last R.C. 2151.414(D)(1) best interest factor, the juvenile court found that none of the R.C. 2151.414(E)(7)-(11) factors applied to appellant.

{¶ 27} Finally, in addition to the R.C. 2151.414(D)(1) best interest factors, the juvenile court found that M.A. could not be placed with appellant within a reasonable time. R.C. 2151.414(E) provides that if one of several factors exists then "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." In this case, the juvenile court found that R.C. 2151.414(E)(1) applied, which states:

> Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 28} Here, the juvenile court found that BCDJFS made diligent efforts to assist, but appellant's repeated failure to participate and complete the substance abuse and mental health treatment, in addition to the fact that he had "recently" tested positive for methamphetamine at a drug screening, established that appellant had failed to substantially remedy the conditions that caused M.A. to be removed from the home. As this court has previously explained, "the key concern is not whether the parent has successfully completed the case plan, but whether the parent has *substantially remedied* the concerns that caused

the child's removal from the parent's custody." (Emphasis sic.) *In re S.M.*, 12th Dist. Clermont No. CA2015-01-003, 2015-Ohio-2318, ¶ 24.

{¶ 29} Appellant testified that the focus of his case plan's treatment and therapeutic services was treating substance abuse. Yet, appellant continued to test positive for controlled substances. The record shows that appellant tested positive for illicit controlled substances on 12 out of 13 of the administered drug screenings that occurred from May 2017 to February 2019. The substance most often identified on these screenings was amphetamine/methamphetamine, however, as noted above, on some occasions, appellant tested positive for cocaine or marijuana use. Furthermore, appellant did not "engage" in the recommended treatment/therapeutic services until November 2018, which is a month after the motion for permanent custody was filed, and even then, appellant stopped participating in the services by the end of December 2018. At the permanent custody hearing, appellant claimed to have attended one more treatment/therapy session shortly before the hearing. Appellant did not offer an explanation for his substance abuse issues, despite acknowledging the unfavorable drug screening results. Consequently, appellant's contention that he "engaged in all the services during the pendency of the case" belies his actual efforts.

{¶ 30} Even if we accepted appellant's contention that he "engaged" with the recommended services:

> the completion of case plan services alone does not equate to, or necessitate a finding that the parents have substantially remedied the conditions that caused the removal of the child from the home.

*In re E.B.*, 12th Dist. Warren Nos. CA2009-10-139 and CA2009-11-146, 2010-Ohio-1122, ¶ 30. As this court has previously explained:

> [a] juvenile court "is not required to deny [a] permanent custody motion simply based upon the groundless speculation that the [parent] might successfully complete her drug treatment, * * * and remain drug-free." *In re J.C.*, 4th Dist. No. 07CA834, 2007 Ohio

- 10 -

3783, ¶ 25. "[A] parent is afforded a reasonable, not an indefinite, period of time to remedy the conditions causing the children's removal." *In re L.M.*, 11th Dist. No. 2010-A-0058, 2011 Ohio 1585, ¶ 50. Although at the time of the permanent custody hearing, [the parent] had taken some small steps toward recovery and compliance with the case plan, it was too little, too late. Further, there is no indication [the parent] has remedied her substance abuse problem.

*In re A.M.L.*, 12th Dist. Butler No. CA2013-01-010, 2013-Ohio-2277, ¶ 32. As in *In re A.M.L.*, here, appellant's limited compliance was too late and insignificant. Moreover, as the juvenile court found, appellant did not complete his recommended services. Ultimately, the record shows that appellant did not remedy the conditions causing the initial removal and has not treated his substance abuse issues. Therefore, it was in the best interest of M.A. for the juvenile court to grant permanent custody to BCDJFS.

{¶ 31} In conclusion, BCDJFS presented sufficient evidence at the permanent custody hearing to clearly and convincingly prove that it was in M.A.'s best interest for BCDJFS to have permanent custody. After our review of the record, we find the permanent custody decision was not against the manifest weight of the evidence. Accordingly, both assignments of error are overruled.

{¶ 32} Judgment affirmed.

S. POWELL and RINGLAND, JJ., concur.