[Cite as *In re C.S.*, 2020-Ohio-4414.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

|   |   |   |
|---|---|---|
| IN RE: | : | |
| C.S. | : | CASE NO. CA2020-04-006 |
| | : | O P I N I O N<br>9/14/2020 |
| | : | |
| | : | |
| | : | |

APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2017-3137

Bieser, Greer & Landis LLP, Matthew M. Suellentrop, 6 North Main Street, Suite 400, Dayton, Ohio 45402-1908, for appellant

Richard W. Moyer, Clinton County Prosecuting Attorney, William C. Randolph, 103 E. Main Street, Wilmington, Ohio 45177, for appellee

**S. POWELL, J.**

{¶ 1} Appellant, the mother of C.S. ("Mother"), appeals the decision of the Clinton County Court of Common Pleas, Juvenile Division, granting permanent custody of C.S. to appellee, Clinton County Children Services ("CCCS"). For the reasons outlined below, we affirm the juvenile court's decision.

**Facts and Procedural History**

{¶ 2} On August 31, 2017, the juvenile court granted CCCS emergency temporary custody of C.S., born on July 31, 2014. The next day, September 1, 2017, CCCS filed a complaint alleging C.S. was an abused, neglected, and dependent child. In support of its complaint, CCCS alleged that it had opened an investigation into C.S. and his siblings after it received a report that Mother was "using drugs, and there were possibly drugs located in the children's residence." Upon receiving this report, CCCS alleged that it contacted Mother who, despite showing signs that she was using drugs, refused to submit to a drug screen. Mother, however, did disclose to CCCS "significant issues of domestic violence in the home." CCCS also alleged that it had discovered issues regarding "suitability and sanitary conditions of the home."

{¶ 3} CCCS alleged that a safety plan was then established that placed C.S. and his siblings with a family friend. CCCS alleged that the children were then "interviewed and disclosed numerous issues related to the use and trafficking of drugs; and domestic violence between the parents and directed toward the children." Following these interviews, CCCS alleged that "the safety plan placement" where C.S. and the children were initially placed "indicated that she was no longer able to care for the children." CCCS alleged that attempts were then made to contact Mother and the children's father ("Father"), "to no avail." CCCS alleged that Mother was eventually located and, after a drug screen, tested positive for fentanyl, morphine, benzodiazepines, methamphetamine, amphetamine, and opiates."

{¶ 4} On September 20, 2017, the juvenile court extended its emergency temporary custody order regarding C.S. and his siblings. Approximately one month later, on October 18, 2017, the juvenile court held an adjudication hearing and adjudicated C.S. an abused, neglected, and dependent child. Mother did not appear at the adjudication hearing. Several weeks later, on November 7, 2017, the juvenile court held a disposition hearing and issued

a dispositional decision that granted temporary custody of C.S. to CCCS. As part of this decision, the juvenile court determined that CCCS had made reasonable efforts to prevent C.S.'s continued removal from Mother and Father's custody and care. These efforts included "case planning and encouraging family placement."

{¶ 5} On January 9, 2018, the juvenile court held a review hearing. Neither Mother nor Father appeared at this hearing. Following this hearing, the juvenile court continued its prior order granting temporary custody of C.S. to CCCS. Approximately nine months later, on September 11, 2018, CCCS filed a motion requesting the juvenile court grant a six-month extension of its temporary custody order. In support of this motion, CCCS alleged that Mother and Father had made "minimal progress" on their required case plan services. These services included, but were not limited to, parenting, domestic violence, and anger management classes, as well as drug and alcohol treatment. CCCS also alleged that C.S.'s safety and security would be at risk if he was returned Mother and Father's care.

{¶ 6} On October 11, 2018, the juvenile court held a hearing on CCCS' motion. Neither Mother nor Father appeared at this hearing. Following this hearing, the juvenile court granted CCCS' motion for a six-month extension of its temporary custody order. In so holding, the juvenile court noted that CCCS had made "reasonable efforts to finalize the permanency plan" for C.S. and his siblings. The juvenile court noted that these "efforts have included case reviews, visitation schedules, and case management. However, it is in the best interest of [C.S.] that CCCS custody be extended."

{¶ 7} On December 11, 2018, the juvenile court held a review hearing. Following this hearing, the juvenile court issued a decision that continued its temporary custody order granting temporary custody of C.S. to CCCS. As part of this decision, the juvenile court noted that Mother and Father had not made any additional progress on their required case plan services. The juvenile court also noted that both Mother and Father had "admitted

- 3 -

continued drug abuse" and that their visits with C.S. had been "sporadic."

{¶ 8} On February 25, 2019, the juvenile court held another review hearing. Following this hearing, the juvenile court issued a decision noting that Mother was not present for the hearing "due to her checking in to an inpatient treatment facility." The juvenile court also noted that Mother and Father had still not made any additional progress on their required case plan services. The juvenile court further noted that Mother and Father had visited C.S. just twice since the last review hearing held on December 11, 2018.

{¶ 9} On April 29, 2019, the juvenile court held yet another review hearing. Following this hearing, the juvenile court issued a decision that noted Mother and Father had made only "limited progress" on their required case plan services. The juvenile court also noted that Mother and Father were "not visiting regularly" with C.S. and that CCCS had expressed its intention to move for permanent custody of C.S.

{¶ 10} On August 23, 2019, CCCS moved for permanent custody of C.S. CCCS supported its motion by alleging C.S. had been in its temporary custody for at least 12 months of a consecutive 22-month period and that "it is in the child's best interest that permanent custody be granted." CCCS also alleged that neither Mother nor Father had made "any progress" on their required case plan services, that they have "been homeless since the case began, have failed to demonstrate sobriety, and have not completed domestic violence classes." CCCS further alleged that within the preceding eight months Mother and Father had attended only three of the possible 33 visits with C.S.

{¶ 11} On February 11, 2020, a one-day hearing was held on CCCS' motion for permanent custody. During this hearing, the juvenile court heard testimony from two witnesses, the CCCS case worker assigned to C.S.'s case and Mother. As part this testimony, Mother acknowledged that she was a "drug addict" who was still struggling with addiction despite making several attempts at rehabilitation including, as noted above, an

- 4 -

inpatient treatment facility. Mother also testified and admitted that she had been homeless for the past six months and was currently staying "wherever," that she had been unemployed for the last few months and making no efforts to find a job, and that she had "put [C.S.] through enough" and "destroyed [her] children." Father did not appear at this hearing.

{¶ 12} On March 16, 2020, the juvenile court issued a decision granting permanent custody of C.S. to CCCS. In so holding, the juvenile court noted that "the only constant" in C.S.'s life had been CCCS and "its efforts to provide him with a safe, secure environment." The juvenile court also noted, in pertinent part, the following:

> The Court also considers the parents lack of progress in any area of their lives which would provide the child with a safe, secure, loving home. The parents remain in the clutches of addiction, are homeless, unemployed, and have not engaged in any parenting or domestic violence classes. CCCS has made reasonable efforts to facilitate the parents' compliance, however neither parent took advantage of the opportunity provided. The agency provided referrals and information for services, drug screened the parents when they could be located, met frequently with the parents when able, and tried to establish regular visitation between themselves and the child. It is obvious that the parents' concerns lie elsewhere than with [C.S.]

{¶ 13} Mother now appeals the juvenile court's decision granting permanent custody of C.S. to CCCS, raising two assignments of error for review.

**Permanent Custody Standard of Review**

{¶ 14} Before a natural parent's constitutionally protected liberty interest in the care and custody of his or her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *In re K.W.*, 12th Dist. Butler No. CA2015-06-124, 2015-Ohio-4315, ¶ 11, citing *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is generally limited to considering

whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6; *In re A.S.*, 12th Dist. Butler Nos. CA2019-05-071, CA2019-05-072, and CA2019-05-073, 2019-Ohio-4127, ¶ 19. This court will reverse a juvenile court's decision to grant permanent custody "if there is a sufficient conflict in the evidence presented." *In re L.S.*, 12th Dist. Brown Nos. CA2019-03-001 and CA2019-03-002, 2019-Ohio-3143, ¶ 17, citing *In re: K.A.*, 12th Dist. Butler No. CA2016-07-140, 2016-Ohio-7911, ¶ 10; *In re W.J.T.*, 12th Dist. Butler No. CA2019-03-047, 2019-Ohio-3051, ¶ 22.

{¶ 15} However, even if the juvenile court's decision is supported by sufficient evidence, "an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence." *In re T.P.*, 12th Dist. Butler No. CA2015-08-164, 2016-Ohio-72, ¶ 19. In determining whether a juvenile court's decision is against the manifest weight of the evidence, an appellate court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'" *In re S.M.*, 12th Dist. Warren Nos. CA2018-08-088 thru CA2018-08-091 and CA2018-08-095 thru CA2018-08-097, 2019-Ohio-198, ¶ 16, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. "In weighing the evidence, there is a presumption in favor of the findings made by the finder of fact and evidence susceptible to more than one construction will be construed to sustain the verdict and judgment." *In re M.A.,* Butler No. CA2019-08-129, 2019-Ohio-5367, ¶ 15.

**Two-Part Permanent Custody Test**

{¶ 16} Pursuant to R.C. 2151.414(B)(1), the juvenile court may terminate parental rights and award permanent custody of a child to a children services agency if the court

makes findings pursuant to a two-part test. *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9. First, the juvenile court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. Second, pursuant to R.C. 2151.414(B)(1)(a) to (e), the juvenile court must find that any of the following apply: (1) the child is abandoned; (2) the child is orphaned; (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. Only one of these findings must be met to satisfy the second prong of the two-part permanent custody test. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

**Appeal**

{¶ 17} Assignment of Error No. 1:

{¶ 18} THE AWARD OF PERMANENT CUSTODY TO CLINTON COUNTY CHILDREN'S SERVICES WAS ERROR BECAUSE THE AGENCY FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILDREN UNDER R.C. 2151.414(B)(1).

{¶ 19} In her first assignment of error, Mother argues the juvenile court erred by finding she had abandoned C.S. under R.C. 2151.414(B)(1)(b). However, even assuming Mother was correct, the juvenile court also found C.S. had been in the temporary custody of CCCS for at least 12 months of a consecutive 22-month period under R.C.

- 7 -

2151.414(B)(1)(d).[1] Mother does not dispute this finding. Therefore, because only one of the findings under R.C. 2151.414(B)(1)(a) thru (e) must be met before the second prong of the two-part permanent custody test is satisfied, any error the trial court may have made by finding Mother had abandoned C.S. under R.C. 2151.414(B)(1)(b) would be, at worst, harmless. *See, e.g., In re D.C.*, 12th Dist. Fayette No. CA2015-03-006, 2015-Ohio-3178, ¶ 29-34 (juvenile court's erroneous decision finding a child had been in the temporary custody of an agency for at least 12 months of a consecutive 22-month period under R.C. 2151.414[B][1][d] was harmless where the juvenile court also found the child could not be placed with either parent within a reasonable time or should not be placed with either parent under R.C. 2151.414[B][1][a]). Accordingly, because any error the juvenile court may have made by finding Mother had abandoned C.S. under R.C. 2151.414(B)(1)(b) would be harmless, Mother's first assignment of error lacks merit and is overruled.

{¶ 20} Assignment of Error No. 2:

{¶ 21} THE AWARD OF PERMANENT CUSTODY TO CLINTON COUNTY CHILDREN'S SERVICES WAS ERROR BECAUSE THE AGENCY FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILDREN UNDER R.C. 2151.414(B)(2).

{¶ 22} In her second assignment of error, Mother argues the juvenile court erred by finding it was in C.S.'s best interest to grant permanent custody to CCCS. We disagree.

{¶ 23} When considering the best interest of a child in a permanent custody case, the juvenile court is required under R.C. 2151.414(D)(1) to consider certain enumerated factors. *In re D.E.*, 12th Dist. Warren Nos. CA2018-03-035 and CA2018-04-038, 2018-

_____

1. The juvenile court found C.S. had remained in the temporary custody of CCCS beginning on October 18, 2017 up to and including when CCCS moved for permanent custody on August 23, 2019. This constitutes a continuous and consecutive period of 22 months and six days.

Ohio-3341, ¶ 32. These factors include, but are not limited to, (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors listed in R.C. 2151.414(E)(7) to (11) apply in relation to the parents and child. *In re J.C.*, 12th Dist. Brown No. CA2017-11-015, 2018-Ohio-1687, ¶ 22. "The juvenile court may also consider any other factors it deems relevant to the child's best interest." *In re A.J.*, 12th Dist. Clermont No. CA2018-08-063, 2019-Ohio-593, ¶ 24.

{¶ 24} Although acknowledging that "the facts of the case and the record don't necessarily favor [Mother]," Mother nevertheless argues that the juvenile court erred by finding it was in C.S.'s best interest to grant permanent custody to CCCS. To support this claim, Mother notes that she had made progress on her case plan, thereby demonstrating that she had put forth some effort towards reunification with C.S. This, according to Mother, includes the completion of her parenting classes and her undertaking "four separate efforts to address her addiction issues." Mother also argues the juvenile court erred by finding it was in C.S.'s best interest to grant permanent custody to CCCS because she loves C.S., she is dedicated to, and desired to be, "a better person for the sake of her children," and because C.S. is bonded with and connected to his siblings. Mother further argues the juvenile court erred by finding it was in C.S.'s best interest to grant permanent custody to CCCS because such a decision creates a "draconian impact" on C.S.'s life and her rights as a parent.

{¶ 25} However, even when accepting all of Mother's claims as true, the record is

- 9 -

clear that Mother cannot provide C.S. with the safety and security that he needs.[2]  This is because, as the juvenile court found, Mother still struggles mightily with her problems with addiction, is currently homeless, and remains unemployed with no job prospects and no source of income.  The same is true as it relates to Father.  Mother's circumstances remain dire despite the fact that CCCS provided both Mother and Father with referrals and information for services to address these issues.  Therefore, despite Mother's claims, we agree with the juvenile court's decision finding it "obvious that the parents' concerns lie elsewhere than with [C.S.]"[3]  We also agree with the juvenile court's decision finding "the only constant" in C.S.'s young life had been CCCS and "its efforts to provide him with a safe, secure environment."  Accordingly, finding no error in the juvenile court's decision finding it was in C.S.'s best interest to grant permanent custody to CCCS, Mother's second assignment of error also lacks merit and is overruled.

{¶ 26} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, concur.

---

2. We note that while Mother claims she completed her parenting classes, the case worker testified that neither Mother nor Father had completed those classes.  We also note that the reason Mother had to undertake multiple attempts at rehabilitation was due to her repeated relapses.

3. The record indicates that Mother and Father attended only 37 of the 119 potential visits with C.S. in the nearly two years after C.S. was removed from their care.