[Cite as *In re L.W.*, 2024-Ohio-3228.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

IN RE: : 

    L.W., et al. : CASE NO. CA2024-04-004

: O P I N I O N
8/26/2024

:

:

:

APPEAL FROM  BROWN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. 20233006; 20233007

Zachary A. Corbin, Brown County Prosecuting Attorney, and Mary McMullen, Assistant Prosecuting Attorney, for appellee, Brown County Children Services.

Christopher Bazeley, for appellant.

Katlyn Harris, guardian ad litem for children.

Rachel V. Triplett, guardian ad litem for mother.

Julie D. Steddom, for father.

**BYRNE, P.J.**

{¶ 1} Appellant ("Mother"), the mother of minor children L.W. ("Logan") and L.C.

("Landon"), appeals the decision of the Brown County Court of Common Pleas, Juvenile Division, granting permanent custody of the children to the Brown County Department of Job and Family Services ("the Agency").[1] For the reasons outlined below, we affirm the juvenile court's decision.

## I. Factual and Procedural Background

{¶ 2} Logan was born to Mother in January 2021, and Landon was born to Mother in September 2022.[2] Mother has Triple X Chromosome Syndrome and displays a flat affect, developmental delays, learning disabilities, and social functioning deficits. As a result, Mother has had difficulty providing proper care and a stable environment for her children.

{¶ 3} Landon was diagnosed with retinopathy of prematurity at birth, a serious eye condition that can lead to blindness without treatment. Mother canceled or failed to attend five appointments related to Landon's retinopathy between November 23, 2022 and January 31, 2023. Mother additionally canceled hematology and urology appointments for Landon in January 2023.

{¶ 4} On January 30, 2023, the Agency received a report of Mother's medical neglect of Landon, and conducted a home visit the same day. The Agency found Landon left unattended in a bassinet, flat on his back with a blanket and a bottle that had been propped up. During the visit, Mother informed the Agency that she did not have food for the children even though she had an allotment of $750 in SNAP benefits. The Agency also received a report that Mother often runs out of food for the children, and resorts to giving Landon water when she is out of formula, even though an infant is at risk for

---

1. "Logan" and "Landon" are pseudonyms adopted in this opinion for purposes of privacy and readability. *In re D.P.*, 12th Dist. Clermont Nos. CA2022-08-043 and CA2022-08-044, 2022-Ohio-4553, ¶ 1, fn. 1.

2. Logan's father is unknown. During the pendency of this case, Landon's father was living separately from Mother. The juvenile court also terminated Landon's father's parental rights, but he did not appeal.

hyponatremia if he regularly consumes more than two ounces of water. During the Agency's engagement with Mother, Mother did not demonstrate an understanding of the seriousness of Landon's need for medical care, and even informed the Agency that she had canceled Landon's last retinopathy appointment simply because it fell on her birthday. On February 2, 2023, the Agency filed a complaint alleging that Logan and Landon were neglected and dependent. A shelter care hearing was held on the same day, and the juvenile court granted temporary custody to the Agency.

{¶ 5} On March 6, 2023, Mother stipulated to the complaint and the children were adjudicated neglected and dependent. On the same day, the Agency filed a case plan for the family, noting concerns about Landon's medical needs and that Logan had been exposed to prenatal substance use, neglected, and witnessed domestic violence. Under the case plan, Mother was directed to cooperate with the Agency in managing her case, obtain safe and stable housing, obtain steady employment and income, complete a mental health assessment and follow any recommendations, complete a psychological evaluation, complete parenting education and follow any recommendations, and complete a domestic violence assessment with the YWCA.

{¶ 6} Over the course of the case, Mother was only consistent with scheduled visits with her children so long as transportation was provided by the Agency. She attended 25 visits and missed 13 visits, mostly due to a lack of transportation. Mother does not have a driver's license and relies on others for transportation. During visits, the Agency noted that Mother tended to focus on one child over the other, and struggled to care for them simultaneously.

{¶ 7} In June 2023, Mother was evicted from her home for allowing people with illegal substances to be at the residence. Mother subsequently changed residences six times during the pendency of the case, each time relying on her boyfriend to provide

housing. Finally, in January 2024, Mother signed a one-year lease for a one-bedroom apartment in Maysville, Kentucky, with financial assistance from her boyfriend. An Agency caseworker visited the apartment and noted extensive water damage, mold, loose flooring, and structural safety concerns, as well as a general lack of cleanliness.

{¶ 8} Mother was unable to maintain a steady job or income. During the pendency of the case, Mother worked at McDonalds and Dollar General for approximately two weeks each, and worked at United Dairy Farmers for approximately three weeks, the longest she had ever been employed. At the time of the permanent custody hearing, she had just begun a part-time job at Dollar Tree. Mother also attempted to use several GoFundMe accounts to help pay for child support and medical bills.

{¶ 9} Mother completed a mental health assessment in July 2023, but the results were invalid due to her lack of truthfulness. The Agency opted not to pay for a full psychological evaluation due to cost and instead simply directed Mother to pursue mental health treatment. From August 2023 until January 2024, Mother did not engage in any mental health services, despite acknowledging that she needed services and potentially medication for PTSD. Mother was referred for another mental health assessment, but did not complete it until January 29, 2024, one month after the Agency filed its motion for permanent custody. The new mental health assessment recommended she undergo individual treatment for six to twelve months.

{¶ 10} During the pendency of the case, the Agency performed random toxicology screens on Mother. On July 13, 2023, Mother tested positive for methamphetamines and amphetamines. On July 19, 2023, Mother tested positive for alcohol and gabapentin, for which she had no prescription. The Agency advised Mother to seek substance abuse treatment via the mental health resources she had already been instructed to utilize, but Mother never pursued substance abuse treatment.

{¶ 11} Mother satisfied the parenting education and domestic violence assessment requirements of the case plan. However, when Mother initially enrolled in the parenting skills enrichment program in March 2023, she failed to complete the coursework. Mother re-enrolled in October 2023 and completed the program on December 4, 2023. Nevertheless, the professional clinical counselor assessing Mother concluded that although she has an "average understanding of parenting basics," she consistently exhibited poor judgement and would likely continue to struggle to maintain stable housing and income for her children.

{¶ 12} Due to Mother's lack of progress and cooperation in her case plan, on December 28, 2023, the Agency filed a motion to terminate temporary custody and award permanent custody of Logan and Landon to the Agency. On January 2, 2024, Mother filed a motion to extend temporary custody. On February 15, 2024, a permanent custody hearing was held, and in an entry journalized on April 16, 2024, the juvenile court awarded the Agency permanent custody and denied Mother's motion to extend temporary custody. In so doing, the court found that the children had been in the temporary custody of the Agency "for 12 out of 22 consecutive months," that "the children cannot be placed with either parent within a reasonable time," that the "parents have not remedied the conditions that caused the removal of the children from the home," and that "it is in the children's best interest that this Court grant the Agency's Motion and terminate the parents' parental rights."

{¶ 13} Mother appealed, bringing two assignments of error.

## II. Legal Analysis

### A. Permanent Custody

{¶ 14} Mother's Assignment of Error No. 1 states:

THE JUVENILE COURT'S DECISION TERMINATING

- 5 -

[MOTHER'S] PARENTAL RIGHTS WAS NOT SUPPORTED
BY CLEAR AND CONVINCING EVIDENCE.

{¶ 15} On appeal, Mother argues that the juvenile court's decision granting permanent custody of Logan and Landon to the Agency was not supported by clear and convincing evidence. Specifically, Mother argues that she remedied the problems that caused the children to be removed in the first place, and therefore the children can be placed back in her custody within a reasonable amount of time. Mother asserts (1) she was able to secure transportation for the children's medical appointments through a program offered by the State of Kentucky; (2) the "Adult-Adolescent Parenting Inventory-2.5" (AAPI-2.5) assessment that she completed in the parenting skills program indicated that she had average parenting skills; (3) she was compliant with her mental health treatment; (4) she attended the majority of scheduled visits with her children and attended meetings to discuss their individualized education plans in preschool; and (5) there are no allegations that she committed any criminal offense where her children were victims.

**1. Applicable Law and Standards of Review**

{¶ 16} "Before a natural parent's constitutionally protected liberty interest in the care and custody of [her] child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met." *In re M.G.*, 2023-Ohio-1316, ¶ 44 (12th Dist.); R.C. 2151.414(E). Under R.C. 2151.414(B)(1), the juvenile court may terminate parental rights and award permanent custody of a child to a children services agency if the court makes findings pursuant to a two-part test. *In re K.P.*, 2022-Ohio-1347, ¶ 17 (12th Dist.). First, R.C. 2151.414(B)(1) provides that the juvenile court must find that the grant of permanent custody to the

agency is in the "best interest" of the child.[3] *In re M.H.*, 2022-Ohio-48, ¶ 35 (12th Dist.). Second, the juvenile court must find that one of the circumstances set forth in R.C. 2151.414(B)(1)(a) to (e) apply. *In re R.B.*, 2022-Ohio-1705, ¶ 31 (12th Dist.). Those circumstances include: (1) the child is abandoned, R.C. 2151.414(B)(1)(b); (2) the child is orphaned, R.C. 2151.414(B)(1)(c); (3) the child has been in the temporary custody of one or more public children services agencies for 12 or more months of a consecutive 22-month period, R.C. 2151.414(B)(1)(d); (4) the child has been removed from the parents' custody or been adjudicated as abused, neglected, or dependent on three separate occasions, R.C. 2151.414(B)(1)(e); and (5) the circumstances described in R.C. 2151.414(B)(1)(b), (c), (d), and (e) do not apply, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the parents, R.C. 2151.414(B)(1)(a). *In re J.B.*, 2023-Ohio-2454, ¶ 13. Only one of these circumstances need apply to satisfy the second prong of the two-part permanent custody test. *In re C.S.*, 2020-Ohio-4414, ¶ 16 (12th Dist.).

**{¶ 17}** "An appellate court's review of a juvenile court's decision granting permanent custody is generally limited to considering whether sufficient credible evidence exists to support the juvenile court's determination." *In re A.S.*, 2019-Ohio-4127, ¶ 19 (12th Dist.). However, "[e]ven if there is sufficient evidence to support the juvenile court's decision, an appellate court may nevertheless reverse a permanent custody judgment if it finds the judgment to be against the manifest weight of the evidence." *In re G.A.*, 2023-

---

3. R.C. 2151.414(D) provides a list of "relevant factors" a court should consider when determining whether permanent custody is in the "best interest" of the child. Those relevant factors include, but are not limited to: "(a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, . . . and any other person who may significantly affect the child; (b) the wishes of the child, as expressed directly or through the guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child . . . ; [and] (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency . . . ." R.C. 2151.414(D)(1).

Ohio-643, ¶ 18 (12th Dist.), citing *In re F.S.*, 2021-Ohio-345, ¶ 61 (12th Dist.). In determining whether a juvenile court's judgment is against the manifest weight of the evidence, an appellate court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'" *In re S.M.*, 2019-Ohio-198, ¶ 16 (12th Dist.), quoting *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. The presumption in weighing the evidence favors the finder of fact, which we are especially mindful of in custody cases. *In re R.K.*, 2021-Ohio-3074, ¶ 15 (12th Dist.). Therefore, if the evidence is susceptible to more than one construction, the reviewing court is bound to give it the interpretation that is consistent with the verdict and judgment. *In re D.S.*, 2022-Ohio-998, ¶ 63 (12th Dist.).

### 2. First Part of the Permanent Custody Test: Best Interest Analysis

{¶ 18} Mother does not challenge the juvenile court's finding under R.C. 2151.414(B)(1) that it is in the children's best interest to award permanent custody to the Agency. Nor does Mother challenge the specific factual findings that the juvenile court made in support of its best interest finding, including but not limited to its findings that "Mother got evicted . . . for allowing people with illegal substances to be at [her] residence," that "Mother had been less than honest with assessors so no [drug] treatment was effective," and that "the record is void of evidence of Mother successfully establishing employment."

{¶ 19} Because Mother does not challenge the juvenile court's best interest finding, we need not review this first part of the permanent custody test further. *In re J.B.* at ¶ 16 (declining to review the second part of the permanent custody test when appealing parent failed to challenge that part of the juvenile court's analysis on appeal); *In re*

*J.N.L.H.*, 2022-Ohio-3865, ¶ 26 (12th Dist.) (same); *In re L.G.*, 2022-Ohio-529, ¶ 55, fn.11 (8th Dist.) (stating that "[b]ecause Mother does not specifically challenge the juvenile court's best-interest determination" the court would not specifically address those findings). Mother effectively concedes that the trial court's best interest finding was not erroneous. Nevertheless, we have reviewed the juvenile court's best interest findings and conclude that they are supported by competent, credible evidence.[4] *See In re L.J.*, 2007-Ohio-5498, ¶ 33 (12th Dist.) ("While appellant does not challenge the magistrate's best interest findings, we have reviewed these findings and find that they are supported by competent, credible evidence").

### 3. Second Part of the Permanent Custody Test

{¶ 20} The main focus of Mother's argument on appeal is that there was not clear and convincing evidence to support the juvenile court's finding that the children could not be placed with her within a reasonable period of time. Rather, Mother asserts that she completed several case plan objectives, demonstrating that she had made substantial progress toward timely reunification. We disagree.

{¶ 21} With regard to the second part of the permanent custody test—that is, whether one of the conditions described in R.C. 2151.414(B)(1)(a), (b), (c), (d), or (e) are met—the juvenile court found that the children had been in the custody of the Agency for "12 out of 22 consecutive months," and that "the children cannot be placed with either parent within a reasonable time" because "[t]he parents have not remedied the conditions that caused the removal of the children from the home." These were references to the conditions described in R.C. 2151.414(B)(1)(d) and (a), respectively.

---

4. Even if we were to generously interpret Mother's argument—which focuses on her assertions that she completed various case plan objectives—as challenging the juvenile court's best interest finding, based on our thorough review of the record, we find that the juvenile court's best interest finding was not erroneous. We reach this finding for the same reasons discussed below with respect to the juvenile court's R.C. 2151.414(B)(1)(a) finding.

{¶ 22} The Ohio Supreme Court has explained that when determining whether a child has been in an agency's custody for 12 of the previous 22 months, the relevant time period to consider is the 22 months prior to the date the permanent custody motion was filed, not the date the judgment entry was journalized. *In re C.W.*, 2004-Ohio-6411, ¶ 26. Here, the children were placed in the agency's temporary custody on February 2, 2023, and the Agency filed its motion for permanent custody on December 28, 2023, just under 11 months later. Therefore, when the Agency filed its motion for permanent custody the children had *not* been in the Agency's temporary custody for 12 of the previous 22 months. The juvenile court therefore erred in finding that the "12 of 22" condition of R.C. 2151.414(B)(1)(d) was met.

{¶ 23} Nevertheless, the juvenile court also found that the children could not be placed with Mother within a reasonable period of time, pursuant to R.C. 2151.414(B)(1)(a). This finding, as long as it is supported by clear and convincing evidence, obviated the need for the Agency to wait more than 12 months before moving for permanent custody and rendered the juvenile court's "12 of 22" error harmless. *In re D.C.*, 2015-Ohio-3178, ¶ 34 (12th Dist.) ("[W]hile the juvenile court erred in finding that [the child] had been in the temporary custody of the agency for more than 12 months of a consecutive 22-month period, the error was harmless as such a finding is unnecessary to a determination that the children cannot or should not be placed with either parent"). Only one of the circumstances set forth in R.C. 2151.414(B)(1)(a) to (e) needs to apply in order to satisfy the second prong of the two-part permanent custody test. *In re C.S.* at ¶ 16. We find that the juvenile court's R.C. 2151.414(B)(1)(a) finding was supported by clear and convincing evidence.

{¶ 24} First, R.C. 2151.414(B)(1)(a), by its clear language, only applies when the circumstances described in R.C. 2151.414(B)(1)(b), (c), (d), and (e) do *not* apply. We

have already determined that the "12 of 22" circumstance described in R.C. 2151.414(B)(1)(d) does not apply here, and no party has argued that the circumstances in R.C. 2151.414(B)(1)(b), (c), or (e) apply here.

{¶ 25} Second, R.C. 2151.414(B)(1)(a) applies when "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." R.C. 2151.414(E) sets forth a non-exclusive listing of factors the juvenile court shall consider in reaching this conclusion. The juvenile court need only find the existence of one of the enumerated R.C. 2151.414(E) factors. *In re D.C.* at ¶ 31. The factors provided in R.C. 2151.414(E)(1) and (4) are relevant here:

> Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
>
> . . .
>
> (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

{¶ 26} For the reasons set forth below, both of these factors are clearly and convincingly supported by the evidence in the record.

{¶ 27} With regard to R.C. 2151.414(E)(1), Mother asserts that she has been fully compliant with her mental health treatment and completed the parenting class mandated in her case plan. However, the record reveals that Mother failed to fully utilize the mental

health services and social services that were provided in the case plan. Mother's efforts were too little and too late.

{¶ 28} Mother's mental health providers determined that she lied during her July 2023 mental health assessment, and Mother was ordered to repeat the assessment—yet from August 2023 until January 2024, Mother did not engage in any mental health services, despite acknowledging that she needed treatment and medication. The Agency also advised Mother, who had tested positive for illegal substances, to seek substance abuse treatment through the same mental health resources, but she never did. Mother only completed the mental health assessment on January 29, 2024, one month after the Agency filed its motion for permanent custody. Further, the assessment recommended she undergo individual treatment for an additional six to twelve months. Mother failed to make substantial progress in her mental health treatment.

{¶ 29} Mother's efforts in parenting education were similarly lacking. The juvenile court found that "Mother engaged in parenting education classes at least three times and did not complete it. Just before trial she signed up again and completed the program." Even so, the program's director concluded that Mother "consistently exhibits poor judgment" and expressed ongoing concerns for Mother's ability to "meet her own basic needs as well as the children's needs." Mother's lacking parenting skills were evident during scheduled visits with the children, where she struggled to care for both children simultaneously and tended to focus on one child over the other. Mother failed to make substantial progress in her parenting education. We find that the conditions described in R.C. 2151.414(E)(1) were established by clear and convincing evidence.

{¶ 30} With regard to R.C. 2151.414(E)(4), Mother failed to obtain stable housing and employment in order to be able to care for her children. The juvenile the court found that in June 2023, during the pendency of the case, Mother was evicted from her home

for allowing people with illegal substances to be at the residence. Mother subsequently changed residences six times, each time relying on her boyfriend for housing and financial support. The Agency's caseworker testified that Mother's latest residence exhibited extensive health and safety concerns, including water damage, mold, loose flooring, structural safety concerns, and a general lack of cleanliness. It was unsuitable for housing children. The juvenile court also found that Mother has been unable to maintain gainful employment. Mother has only held various fast food and convenience store jobs for a few weeks at a time before being fired, in part due to poor attendance. The longest stretch of time Mother was employed was only three weeks. Mother does not have the means to provide an adequate permanent home for the children. The conditions described in R.C. 2151.414(E)(4) were established by clear and convincing evidence.

{¶ 31} The juvenile court properly found that Logan and Landon could not be placed with Mother within a reasonable period of time as Mother failed to remedy the conditions that led to the children's removal, and Mother demonstrated an unwillingness or inability to provide an adequate permanent home.

{¶ 32} The juvenile court satisfied both parts of the permanent custody test and its findings were supported by clear and convincing evidence. Mother's first assignment of error is overruled.

### B. Extension of Temporary Custody

{¶ 33} Mother's Assignment of Error No. 2 states:

> THE JUVENILE COURT'S DECISION OVERRULING [MOTHER'S] MOTION TO EXTEND TEMPORARY CUSTODY WAS AN ABUSE OF DISCRETION

{¶ 34} In her second assignment of error, Mother claims that the juvenile court abused its discretion by overruling her motion to extend temporary custody. Mother asserts that she needed more time to complete the requirements of the case plan and

her request was reasonable given that the Agency filed its motion for permanent custody of the children less than twelve months after taking temporary custody. We disagree.

{¶ 35} Pursuant to R.C. 2151.415(D) and Juv.R. 14, a juvenile court may extend a temporary custody order for a period of six months if it determines, by clear and convincing evidence, that the extension (1) is in the best interest of the child, (2) there has been significant progress on the case plan of the child, and (3) there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension. *See In re T.W.*, 2017-Ohio-8268, ¶ 24 (12th Dist.). "'Notably the [extension] statute provides only that the juvenile court *may* extend the temporary custody order, not that it *must* do so.'" (Emphasis sic.) *Id.* at ¶ 25, quoting *In re H.G.*, 2015-Ohio-1764, ¶ 20 (12th Dist.). A juvenile court's decision to grant or deny a request for an extension of temporary custody is therefore reviewed under an abuse-of-discretion standard. *Id.* An abuse of discretion is more than an error of law or judgment; it implies the attitude of the court was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 36} Here, the trial court correctly found that Mother had made no substantial progress toward reunification that would warrant an extension. In the eleven months from the time the Agency took temporary custody of the children until Mother filed her motion for an extension, she tested positive for illegal substances, failed to consistently pursue mental health or substance abuse treatment, failed to obtain steady employment, failed to obtain steady and safe housing, failed to attend a significant number of scheduled visits with her children, and generally failed to remedy the circumstances that caused her children to be removed from her custody in the first place. "'[A] juvenile court is not required to prolong the custody proceedings for a parent to begin to cooperate in the case planning process.' This is especially true where the evidence introduced at the permanent

- 14 -

custody hearing demonstrated it was in the children's best interest for permanent custody to be granted." *In re I.C.*, 2022-Ohio-3101, ¶ 53 (12th Dist.), quoting *In re May*, 2019-Ohio-3601, ¶ 30 (6th Dist.). We can speculate that Mother *might* one day resolve her problems with mental health, substance abuse, employment, and housing, but "the juvenile court did not err by refusing to make her children exchange a distant and speculative hope for stability and permanency now." *In re J.B.*, at ¶ 32.

**{¶ 37}** Accordingly, we find that extension was not in the best interest of the children, Mother failed to make significant progress on the case plan, and there is no reasonable cause to believe reunification would occur within the period of extension. Therefore, the juvenile court did not abuse its discretion in overruling Mother's motion to extend temporary custody. Mother's second assignment of error is overruled.

### III. Conclusion

**{¶ 38}** In light of the foregoing, we conclude the juvenile court did not err by determining that it was in Logan and Landon's best interest to grant permanent custody to the Agency. As such, we find the juvenile court's decision to grant permanent custody of Logan and Landon to the Agency was supported by clear and convincing evidence and was not against the manifest weight of the evidence. Both of Mother's assignments of error are overruled.

**{¶ 39}** Judgment affirmed.

HENDRICKSON and M. POWELL, JJ., concur.