[Cite as *In re J.E.*, 2026-Ohio-137.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | |
| | | CASE NO. CA2025-08-090 |
| J.E., et al. | : | |
| | | OPINION AND |
| | : | JUDGMENT ENTRY |
| | | 1/16/2026 |
| | : | |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2023-0270, JN2023-0296

Matthew A. Craig, for appellant.

Michael T. Gmoser, Butler County Prosecuting Attorney, and John C. Heinkel, Assistant Prosecuting Attorney, for appellee, Butler County Children Services.

Legal Aid Society of Southwest Ohio, and Nicole M. Stephenson, for Guardian Ad Litem.

**O P I N I O N**

**PIPER, J.**

{¶ 1}  Appellant ("Father"), the father of minor children J.E. ("Jacob") and J.E.

("Jeff"), appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of the children to Butler County Children Services ("the Agency").[1] For the reasons outlined below, we affirm the juvenile court's decision.

## I. Factual and Procedural Background

{¶ 2} In August of 2022, Father's adopted daughter, "Clara," was found with numerous injuries, including ligature marks on her wrists, bruising on the front and back of her neck, bruising on her arms, legs, chest and back, a burn mark on her hand, a laceration on her tongue, and broken blood vessels in her eyes consistent with choking. Clara was removed from the home on August 17, 2022; Jacob and Jeff were removed three weeks later after Mother disclosed her involvement in the abuse.[2] At the time of removal, Clara was 14 years old, Jacob was 11 years old, and Jeff was 6 years old. Both parents were criminally charged and Father later pled guilty to felonious assault and endangering children as to Clara and was sentenced to six to nine years in prison. Mother pled guilty to permitting child abuse and attempted child endangering and was also incarcerated.

{¶ 3} Shortly after the children were placed in foster care, their maternal grandparents expressed interest in caring for them and all three children were eventually placed in their grandparents' home in November of 2022. On October 10, 2023, the children were adjudicated dependent with a disposition of temporary custody to the Agency. Mother permanently surrendered her parental rights during the course of the proceedings.

{¶ 4} The Agency developed case plan services for Father, including a domestic

---

1. The children's names are pseudonyms adopted in this opinion for purposes of privacy and readability. *In re D.P.*, 12th Dist. Clermont Nos. CA2022-08-043 and CA2022-08-044, 2022-Ohio-4553, ¶ 1, fn. 1.

2. Clara's custody proceedings were combined with her brothers, but Father only appeals as to the permanent custody of Jacob and Jeff.

violence assessment, a psychological evaluation, and (if reunification approached) referral to a parenting education program. Father never engaged in any of these services, and in October 2023, he expressly requested to be removed from the case plan. He never attempted to resume the case plan.

{¶ 5} On March 13, 2024, the Agency filed for permanent custody of the children. On September 9, 2024, Father filed a motion for an order granting legal custody of Jacob and Jeff to his cousin who lives in Virginia. Father's cousin filed her own motion for an order adding her as a party to the cases and granting her legal custody of Jacob and Jeff. The case proceeded to trial before a magistrate on March 4, 2025. The magistrate heard testimony from Father's cousin, the Agency's case worker, the children's maternal grandmother, and Mother.

{¶ 6} The children's maternal grandmother testified that the children were doing well in their placement in the maternal grandparents' home, and that the children were bonded to each other. Grandmother also testified that she and the children's grandfather did not want to pursue legal custody of the children, but instead supported granting the Agency permanent custody, and the grandparents would then seek to adopt the children. Mother permanently surrendered her parental rights to all three children and testified that Father "tortured" the children, taught them "violent behavior," and described the violent acts leading to his criminal convictions.

{¶ 7} The guardian ad litem ("GAL") also submitted a written report recommending that permanent custody be granted to the Agency. The GAL did not testify and no party asked to cross-examine her about her report.

{¶ 8} On May 13, 2024, the magistrate issued a decision granting permanent custody of the children to the Agency. The magistrate found the children had been abandoned by their parents, pursuant to R.C. 2151.414(B)(1)(b); had been in the

Agency's custody for at least 12 of the previous 22 months, pursuant to R.C. 2151.414(B)(1)(d); and that an award of permanent custody to the Agency was in their best interest. Father and Father's cousin filed objections on July 8, 2025, and on July 11, 2025, the juvenile court overruled the objections and adopted the magistrate's decision with one date correction.

{¶ 9} Father appealed, bringing two assignments of error.

## II. Legal Analysis

## A. Legal Custody

{¶ 10} Father's Assignment of Error No. 1 states:

THE TRIAL COURT WAS CLEARLY UNDER THE MISTAKEN BELIEF THAT IT COULD NOT GRANT LEGAL CUSTODY TO THE MATERNAL GRANDPARENTS, RENDERING ITS CONSIDERATION OF THE BEST INTEREST FACTORS SET FORTH IN OHIO REVISED CODE § 2151.414(B)(1), AND ITS DECISION BASED THEREON, FLAWED SUCH THAT THIS COURT SHOULD REVERSE THE JUDGMENT BELOW AND REMAND THE CASE FOR RECONSIDERATION.

{¶ 11} On appeal, Father argues that the trial court failed to properly consider whether Jacob and Jeff could be provided with a legally secure placement without the need to resort to a grant of permanent custody to the Agency. Specifically, Father contends that the magistrate failed to properly consider the possibility of granting *legal custody* of the boys to the maternal grandparents, because the juvenile court could have done so on its own motion. Father asserts that the trial court incorrectly assumed that granting legal custody to the maternal grandparents was impossible because no party had filed such a motion. We find Father's arguments are without merit.

{¶ 12} Granting legal custody of Jacob and Jeff to their maternal grandparents was not an available dispositional alternative because no motion for legal custody had been filed. *See In re C.J.F.-O.,* 2024-Ohio-6056, ¶ 29 (12th Dist.). R.C. 2151.353(A)(3) permits

a court to "[a]ward legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings." The motion requirement is mandatory. *In re B.L.*, 2018-Ohio-547, ¶ 25 (12th Dist.). Here, no party filed a motion seeking a grant of legal custody of the children to the maternal grandparents. At the permanent custody hearing, the children's maternal grandmother specifically testified that she and the maternal grandfather had researched legal custody and instead supported granting permanent custody to the Agency with the future possibility of adopting the children themselves, because it would be in the best interest of the children and provide them with "permanency and a sense of belonging[.]" Father's "suggestion that the Agency or the juvenile court should have forced legal custody on an unwilling Grandmother finds no support in law or logic." *C.J.F.-O.* at ¶ 29. Even if the option of granting legal custody to the maternal grandparents had been properly before the juvenile court, its availability would not preclude a grant of permanent custody to the Agency if such disposition served the children's best interest. *Id.* at ¶ 31.

{¶ 13} Father's first assignment of error is overruled.

### B. Extension of Temporary Custody

{¶ 14} Father's Assignment of Error No. 2 states:

> FATHER FAILED TO RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL IN THIS CASE AND THE COURT SHOULD, THEREFORE, REVERSE JUDGMENT BELOW AND REMAND THE CASE FOR REHEARING.

{¶ 15} In his second assignment of error, Father claims he received ineffective assistance of counsel in this case because (1) there is no indication in the record that counsel made any efforts to permit Father to participate in the permanent custody

proceeding, (2) trial counsel failed to file a motion to grant legal custody to the maternal grandparents as an alternative to a grant of legal custody to Father's cousin or permanent custody to the Agency, (3) trial counsel failed to remind the trial court of its duty to grant temporary custody of the children to the grandparents on its own motion, and (4) trial counsel failed to file objections to several of the magistrate's findings that were not supported by the record. Father's second assignment of error is also without merit.

{¶ 16} "A parent is entitled to the effective assistance of counsel in cases involving the involuntary termination of his or her parental rights." *In re B.M.*, 2023-Ohio-1112, ¶ 72 (12th Dist.), citing *In re B.J.*, 2016-Ohio-7440, ¶ 68 (12th Dist.). In determining whether counsel was ineffective in a permanent custody hearing, a reviewing court must apply the two-tier test of *Strickland v. Washington*, 466 U.S. 668 (1984). *In re G.W.*, 2014-Ohio-2579, ¶ 12 (12th Dist.). The parent must show that counsel's performance was outside the wide range of professionally competent assistance and that counsel's deficient performance prejudiced the parent. *Id.* "[A] reviewing court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [parent] as a result of the alleged deficiencies." *Id.* at ¶ 13. To show that he was prejudiced by his counsel's deficient performance, the parent must show that there is "a reasonable probability that but for . . . [his] counsel's alleged errors, the result of the proceedings would have been different." *In re L.J.*, 2015-Ohio-1567, ¶ 33 (12th Dist.). A "reasonable probability" is one sufficient to undermine confidence in the outcome of the proceedings. *In re C.S.*, 2018-Ohio-4786, ¶ 34 (12th Dist.).

Meaningful Participation

{¶ 17} Father's counsel was not ineffective for not pursuing greater participation from Father at the permanent custody hearing, and Father was not thereby prejudiced. The fundamental requirement of due process is an opportunity to be heard "at a

meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). However, an incarcerated parent has no absolute right to participate in permanent custody proceedings. *In re Sprague*, 113 Ohio App.3d 274, 276 (12th Dist. 1996); *In re J.F.*, 2019-Ohio-3172, ¶ 16 (12th Dist.). In these circumstances, the due process right can be satisfied for arranging for the incarcerated parent's presence at the hearing or by an alternative method of meaningful participation. *In re K.T.*, 2015-Ohio-2304, ¶ 16.

{¶ 18} Here, Father's trial counsel reiterated to the trial court that Father had filed a motion requesting legal custody of Jacob and Jeff be granted to his cousin, and that he supported his cousin's own motion seeking the same. There is no explanation in Father's brief what he might have offered if he had participated more meaningfully in the hearing, and he offers no argument as to how the outcome might have otherwise been different. Father made no effort to participate in the children's case plan, and considering Father's abusive treatment of the children, and the violence that led to their removal, it is reasonable that his absence may have been a well-considered trial strategy to avoid cross-examination and the potential harm to whatever chance there was for a result other than permanent custody to the Agency. We find there is nothing in the record demonstrating Father's counsel's performance was so lacking as to create an unjust result at the permanent custody hearing, or that the result of the proceeding would have been different had Father further participated in the hearing. *See In re L.D.*, 2025-Ohio-2892, ¶ 72.

Legal Custody Arguments

{¶ 19} Father's trial counsel was not deficient by failing to file a motion that legal custody of Jacob and Jeff be granted to their maternal grandparents. The maternal grandparents did not file such a motion themselves, and the maternal grandmother made it clear that they supported permanent custody to the Agency so they could eventually

pursue adoption. As we have already discussed above, granting legal custody to the maternal grandparents was not possible. "An attorney is not ineffective for failing to make futile requests." *State v. Brown*, 2018-Ohio-4939, ¶ 11 (12th Dist.).

### Seeking Temporary Custody Order

{¶ 20} Father's trial counsel was not ineffective for not "reminding" the trial court that it had a duty to grant temporary custody to the maternal grandparents pursuant to R.C. 2151.314(B)(2) and 2151.28(B)(1). Father contends that if the maternal grandparents had been granted temporary custody, it would have prevented his children from being in the temporary custody of the Agency for 12 of 22 consecutive months and would have prevented a grant of permanent custody pursuant to R.C. 2151.414(B)(1)(d). Nevertheless, at the combined adjudicatory and dispositional hearing on October 10, 2023, all parties agreed to an adjudication of the children as dependent with temporary custody granted to the Agency, thus the trial court was under no duty to grant temporary custody to the maternal grandparents. Even if Father's attorney had pursued a grant of temporary custody to the maternal grandparents at that time, there is no indication that permanent custody would not have still been granted to the Agency in the end.

{¶ 21} Father never attempted to participate in the case plan, and permanent custody could have still been granted to the Agency—even if the children were in the temporary custody of the Agency for less than 12 of 22 consecutive months—provided the trial court found "the child[ren] cannot be placed with either of the child[ren]'s parents within a reasonable time or should not be placed with the child[ren]'s parents" pursuant to R.C. 2151.414(B)(1)(a). *See In re L.W.* 2024-Ohio-3228, ¶ 23 (12th Dist.). Moreover, the Agency moved for permanent custody under both R.C. 2151.414(B)(1)(a) and (B)(1)(d).

### Potential Objections

{¶ 22} Father's trial counsel was not ineffective for not filing certain objections to the magistrate's findings. Father argues that the magistrate improperly applied factors described in R.C. 2151.414(E)(5), (6), and (12), because they are only relevant in determining whether a child cannot or should not be placed with either parent within a reasonable time. Father also argues that the magistrate incorrectly found that the children had been abandoned, asserting that Mother had maintained contact through phone calls.

{¶ 23} R.C. 2151.414(B)(1) provides that a juvenile court may grant permanent custody of a child to an agency if the court determines that (1) it is in the best interest of the child and (2) one of five circumstances set forth in R.C. 2151.414(a) to (e) apply. *In re L.W.*, 2024-Ohio-3228, ¶ 16 (12th Dist.). Here, the magistrate found two of the circumstances applied: R.C. 2151.414(B)(1)(b)—finding the children had been abandoned, and (d)—the children had been in the temporary custody of the Agency for more than 12 of 22 consecutive months prior to the Agency moving for permanent custody.

{¶ 24} R.C. 2151.414(E) lists factors the court shall consider in determining whether a child cannot or should not be placed with a parent within a reasonable time. R.C. 2151.414(E)(5), (6), and (12) pertain to a parent's conviction for certain offenses committed against a child or the child's sibling, and the parent's incarceration. Determining whether a child can be placed with a parent within a reasonable time is only necessary when applying the circumstance set forth in R.C. 2151.414(B)(1)(a)—where the child has been in the temporary custody of the Agency for less than 12 of 22 consecutive months. Here, the juvenile court did not apply that circumstance, therefore its findings under R.C. 2151.414(E)(5), (6), and (12) were unnecessary. Nevertheless, while engaging with this statutory framework was unnecessary, it is patently clear that the trial court's factual findings were relevant to its analysis of the children's best interest.

Father is convicted of violent crimes perpetrated against Jacob and Jeff's sister, and he is unavailable to care for them because he is incarcerated for six to nine years. The trial court's consideration of these facts was not inappropriate.

{¶ 25} Father also takes issue with the trial court's application of R.C. 2151.414(B)(1)(b), because the record is not clear whether Mother maintained continuous contact with the children while she was incarcerated, such that they were not "abandoned" according to the definition of R.C. 2151.011(C).[3] However, by the time of the permanent custody hearing, Mother had already surrendered her parental rights, thus only Father's abandonment of the children was relevant to the trial court's analysis. For the entirety of this case, Father refused to participate in the case plan and thus never made any effort to reestablish contact with his sons. Therefore, the trial court's application of R.C. 2151.414(B)(1)(b), and finding that Jacob and Jeff were abandoned, was appropriate.

{¶ 26} Ultimately, Father has failed to demonstrate that objecting to these findings would have resulted in a different outcome. The record clearly supports the magistrate's findings that Jacob and Jeff had been in the custody of the Agency for more than 12 of 22 consecutive months, and that granting permanent custody to the Agency was in their best interest. The magistrate made the following findings in support: Father had been convicted of felonious assault and endangering children, and was unavailable to care for Jacob and Jeff due to his incarceration; Mother has surrendered her parental rights; Jacob and Jeff are happy and secure in their placement with their maternal grandparents, and are bonded to their sister who is also in the care of the maternal grandparents; and granting legal custody to Father's cousin would be inappropriate because she has no

---

3. R.C. 2151.011(C) provides "For the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."

relationship with Jacob and Jeff, and they would be separated from their sister.

{¶ 27} Father's second assignment of error is overruled.

### III. Conclusion

{¶ 28} In light of the foregoing, we conclude the juvenile court did not err in finding that it was in Jacob and Jeff's best interest to grant permanent custody to the Agency. We also conclude that Father's trial counsel was not ineffective, and Father was not prejudiced by counsel's decisions not to raise certain arguments and objections. Both of Father's assignments of error are overruled.

{¶ 29} Judgment affirmed.

BYRNE, P.J., and SIEBERT, J., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas, Juvenile Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Matthew R. Byrne, Presiding Judge

/s/ Robin N. Piper, Judge

/s/ Melena S. Siebert, Judge